Case No. 21-3025

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

**JEREMY J. LINDSEY**,
*Plaintiff-Appellant*

v.

**RUSSELL COOK**
*Defendant-Appellee*

**BRIEF OF DEFENDANT-APPELLEE
RUSSELL COOK**

Appeal from the United States District Court for the District of Kansas
Honorable Holly L. Teeter, United States District Court Judge and
Teresa J. James, United States District Court Magistrate Judge
Case No. 19-CV-3094-HLT-TJJ

OFFICE OF KANSAS ATTORNEY
GENERAL DEREK SCHMIDT
Michael Duenes, Assistant A.G.
120 SW 10th Ave, 2d Floor
Topeka, Kansas 66612
(785) 296-2215
michael.duenes@ag.ks.gov

**ORAL ARGUMENT IS NOT REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.......................................................................ii

PRIOR OR RELATED APPEALS........................................................iv

JURISDICTIONAL STATEMENT .......................................................... 1

STATEMENT OF THE ISSUE ................................................................ 1

STATEMENT OF THE CASE .................................................................. 1

SUMMARY OF ARGUMENT ................................................................. 3

ARGUMENT ............................................................................................ 4

Standard of Review ................................................................................ 4

Discussion................................................................................................ 5

      A.   The district court properly deemed Cook's facts admitted and disregarded Lindsey's factual contentions.................................. 5

      B.   Lindsey's affidavits and factual statements do not create a genuine issue of material fact ..................................................... 8

      C.   Lindsay's administrative remedies were not rendered unavailable. .............................................................................. 13

      D.   Lindsey's personal injury claim does not save his § 1983 claim........................................................................................... 16

CONCLUSION ...................................................................................... 17

CERTIFICATE OF COMPLIANCE...................................................... 18

CERTIFICATE OF DIGITAL SUBMISSION ....................................... 18

CERTIFICATE OF SERVICE................................................................ 18

10th Cir. R. 28.2(B) ATTACHMENTS................................................. 19

i

Fed. R. App. P. Rule 28(f) Attachments .................................................. 19

## TABLE OF AUTHORITIES

Cases                                                                            Page(s)

*Adler v. Wal-Mart Stores, Inc.*,
   144 F.3d 664 (10th Cir. 1998) .................................................................. 8

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................. 9

*Barnes v. United States*,
   173 Fed. Appx. 695 (10th Cir. 2006) ....................................................... 7

*Gray v. Sorrels*,
   818 Fed. Appx. 787 (10th Cir. 2020) ...................................................... 12

*Hall v. Bellmon*,
   935 F.2d 1106 (10th Cir. 1991) .......................................................... 5, 10

*Jernigan v. Stuchell*,
   304 F.3d 1030 (10th Cir. 2002) .......................................... 4, 5, 9, 14, 15

*L&M Enters., Inc. v. BEI Sensors & Sys. Co.*,
   231 F.3d 1284 (10th Cir. 2000) ........................................................ 10, 11

*Nunez v. Heimgartner*,
   2017 WL 2264466 (D. Kan. May 24, 2017) ........................................... 16

*Ogden v. San Juan Cty.*,
   32 F.3d 452 (10th Cir. 1994) .................................................................... 7

*Roberts v. Barreras*,
   484 F.3d 1236 (10th Cir. 2007) ............................................................... 9

*Talley v. Time, Inc.,*
  923 F.3d 878 (10th Cir. 2019)....................................................4

*Thomas v. Wichita Coca-Cola Bottling Co.,*
  968 F.2d 1022 (10th Cir. 1992)..................................................8

*Tuckel v. Grover,*
  660 F.3d 1249 (10th Cir. 2011)..................................................9

*Whitington v. Ortiz,*
  472 F.3d 804 (10th Cir. 2007)..............................................14, 15

*Woodford v. Ngo,*
  548 U.S. 81 (2006)...........................................................9, 12

Statutes

28 U.S.C. § 1291 .................................................................1
42 U.S.C. § 1983 ............................................. 1, 4, 9, 14, 16, 17
42 U.S.C. § 1997e(a) ............................................................9

Rules

10th Cir. R. 32(b) .............................................................18
Fed. R. App. P. 32(a)(5)(A) ...................................................18
Fed. R. App. P. 32(a)(6) ......................................................18
Fed. R. App. P. 32(a)(7)(B)(i) ................................................18
Fed. R. App. P. 32(f) .........................................................18
Fed. R. Civ. P. 56(a) ..........................................................4
Fed. R. Civ. P. 56(c) ..........................................................6

Regulations

K.A.R. § 44-16-104a............................................................16
K.A.R. § 44-15-102(a)(2) ..................................................12, 15
K.A.R. §§ 44-15-101(b) and (d); 44-15-102(a)-(c)............. 10, 11, 12, 13, 15

Other Authorities

D. Kan. Rule 56.1 ...................................................................19
D. Kan. Rule 56.1(a) ...............................................................5
D. Kan. Rule 56.1(b)(1)...........................................................6
D. Kan. Rule 56.1(b)(2)...........................................................6

## **PRIOR OR RELATED APPEALS**

None

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Kansas had jurisdiction over this case because Plaintiff, Jeremy J. Lindsey, asserted claims under 42 U.S.C. § 1983. This appeal arises from the district court's February 4, 2021 order granting Defendant, Russell Cook's, motion for summary judgment and dismissing Lindsey's remaining state law claims without prejudice. Lindsey filed a motion to reconsider, which the district court denied on June 16, 2021. Lindsey filed a timely amended notice of appeal on June 23, 2021. Under 28 U.S.C. § 1291, this Court has jurisdiction to hear Lindsey's appeal. This appeal comes from a final judgment disposing of all of Lindsey's claims.

## STATEMENT OF THE ISSUE

**The district court properly granted summary judgment because Lindsey did not exhaust his administrative remedies.**

## STATEMENT OF THE CASE

Plaintiff-Appellant, Jeremy J. Lindsey, was incarcerated at Hutchinson Correctional Facility on December 11, 2018, when the events at issue occurred. (ROA at 12, 17). In his amended § 1983 complaint, Lindsey claimed Cook had ordered him back to his cell, and as he was complying, Cook attacked him unprovoked and put him in a chokehold.

1

(ROA at 12-13). Lindsey argued that Cook's actions amounted to assault or battery and violated his Eighth Amendment rights. (ROA at 14). Lindsey claimed he exhausted all of his administrative remedies, but nothing in his amended complaint shows he completed the Kansas Department of Corrections ("KDOC") grievance procedure. (ROA at 12-33).

Ultimately, Cook moved to dismiss Lindsey's state law claims for lack of jurisdiction and for summary judgment based on Lindsey's failure to exhaust administrative remedies. (ROA at 113). Lindsey responded, asserting that although he filed both a personal injury claim and a grievance to the highest level possible, prison officials never responded to his grievances. (ROA at 130). Cook replied that Lindsey failed to properly challenge Cook's statement of facts, and no genuine dispute exists as to whether Lindsey exhausted his administrative remedies. (ROA at 140-44).

The district court granted Cook's summary judgment motion and dismissed Lindsey's remaining state law claims without prejudice (declining to exercise supplemental jurisdiction). (ROA at 160-66). Lindsey moved the court to reconsider its decision, which the court denied. (ROA at 169-72, 227).

Lindsey timely filed an Amended Notice of Appeal. (ROA at 233-34).

## SUMMARY OF ARGUMENT

The district court properly granted summary judgment in Cook's favor, and its decision should be affirmed for numerous reasons.

First, the district court properly found that Lindsey's response to Cook's summary judgment motion did not comply with federal and local rules, so Cook's facts should be deemed admitted and Lindsey's factual contentions disregarded. On that basis, Lindsey showed no genuine issue of material fact.

Second, even if Lindsey's noncompliance with the rules is excused, the district court correctly determined that his conclusory, unsupported, and self-serving affidavits and factual assertions do not create a genuine issue of material fact. Moreover, Lindsey's failure to comply with the KDOC grievance process deadlines means he did not exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), as he was required to do.

Third, the district court properly found that the KDOC administrative remedies were available to Lindsey, and he was not

hindered in pursuing them. Rather, he was able to follow the KDOC process, but failed to complete it.

Finally, the district court correctly determined that Lindsey's pursuit of a personal injury claim did not mean he exhausted his administrative remedies for his § 1983 claim. Rather, the two claims have distinct remedies that must be separately pursued.

## ARGUMENT

**The district court properly granted summary judgment because Lindsey did not exhaust his administrative remedies.**

### Standard of Review

This Court reviews a grant of summary judgment de novo, "applying the same legal standard as the district court," and "view[ing] the evidence and draw[ing] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Talley v. Time, Inc.*, 923 F.3d 878, 893 (10th Cir. 2019) (internal quotation marks omitted). Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

This Court also reviews de novo the district court's finding that Lindsey failed to exhaust his administrative remedies. *Jernigan v.*

*Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Because Lindsey appears *pro se*, this Court must construe his filings liberally, but it does not serve as his advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## Discussion

The district court correctly granted summary judgment in Cook's favor because the undisputed material facts show that Lindsey failed to exhaust his administrative remedies as is mandatory under the PLRA. (ROA at 165).

### A. The district court properly deemed Cook's facts admitted and disregarded Lindsey's factual contentions.

The district court correctly determined that Lindsey's response to Cook's summary judgment motion "does not comply with the federal or local rules[,]" and therefore, the court deemed Cook's facts admitted for summary judgment purposes. (ROA at 163).

D. Kan. Rule 56.1(a) states that "[a]ll material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." Subsection (b)(1) requires the party opposing summary judgment to provide "a concise statement of material facts as to which the party contends a genuine issue exists," and to do so in

numbered paragraphs, "refer[ring] with particularity to those portions of the record upon which the opposing party relies, and, if applicable, stat[ing] the number of movant's fact that is disputed." *See* Fed. R. Civ. P. 56(c). Further, D. Kan. Rule 56.1(b)(2) requires that additional facts offered by the nonmoving party must be set forth "in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a)[.]"

Here, Lindsey's response did not refer to Cook's three numbered facts, nor did Lindsay's factual assertions attempt to specifically controvert them. (ROA at 130-34). Lindsey did not provide a concise statement of facts identifying in numbered paragraphs the facts he disputes with particular reference to the record. (ROA at 130-31). Lindsey did not separately number additional facts with references to the record pursuant to D. Kan. Rule 56.1(b)(2). (ROA at 130-34).

In his opening brief to this Court, Lindsey asserts that he "did separately number material facts and disputed defendant's claim." (Opening Br. at 2). But simply numbering facts does not comport with the rules. Lindsey also needed to "refer with particularity to those portions of the record upon which [he] relies" and to "state the number of [Cook's] fact that is disputed." D. Kan. Rule 56.1(b)(1). He did not do this.

6

(ROA at 130-34). Further, Lindsey's factual statements had to state "material facts as to which the party contends a genuine issue exists." *Id*. But his numbered statements stated no such facts. Rather, Lindsey simply noted that Cook moved for summary judgment based on failure to exhaust administrative remedies and alleged that the failure to respond to his filed grievances hindered his efforts to complete the grievance process. (ROA at 130).

Lindsey further claims he "followed Rule 56(c) as best as he understood it." (Opening Br. at 2). Yet this does not relieve him of properly following the rule, particularly when, as here, Lindsey received a Notice to Pro Se Litigant Who Opposes Summary Judgment, advising him of the rules. (ROA at 141, 163); *see Ogden v. San Juan Cty*., 32 F.3d 452, 455 (10th Cir. 1994) (holding that a *pro se* appellant must comply with the fundamental requirements of the Federal Rules of Civil Procedure); *Barnes v. United States*, 173 Fed. Appx. 695, 697 (10th Cir. 2006) (*Pro se* pleadings "must comply with minimum requirements established by local rules.").

Thus, the district court correctly deemed Cook's facts admitted, disregarded Lindsey's factual claims, and held that Lindsey did not show a genuine issue of material fact regarding exhaustion of administrative

remedies. (ROA at 163-64). This Court should affirm the district court's holding.

### B. Lindsey's affidavits and factual statements do not create a genuine issue of material fact.

Even if this Court excuses Lindsey's noncompliance with the rules for opposing summary judgment motions, his affidavits and factual assertions do not create a genuine issue of material fact as to whether he exhausted his administrative remedies.

On summary judgment, the movant has the initial burden to point out the portions of the record showing the movant is entitled to judgment as a matter of law. *Thomas v. Wichita Coca-Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir. 1992). The movant need not disprove a claim or defense, but merely show "a lack of evidence" on an essential element. *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998). "If the movant carries this initial burden … the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether the evidence is so one-sided

that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

Under the PLRA, a prisoner cannot bring an action "with respect to prison conditions under section 1983 … until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Proper exhaustion requires compliance with all prison grievance procedures, including "an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan*, 304 F.3d at 1032. The defendant has the burden to prove the plaintiff failed to exhaust his administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). But "[o]nce a defendant proves that a plaintiff failed to exhaust … the onus falls on the plaintiff to show that remedies were unavailable to him[.]" *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011).

In Kansas, an inmate must complete a four-step grievance process: (1) attempt an informal resolution with unit team members; (2) submit a grievance form to an appropriate unit team member; (3) submit a grievance report form to the warden of the facility; and (4) appeal to the

secretary of corrections. *See* K.A.R. §§ 44-15-101(b) and (d); 44-15-102(a)-(c).

Here, Cook met his initial burden by providing evidence that Lindsey did not complete the prescribed grievance process. (ROA at 118-19). Specifically, Cook presented declarations from the Administrative Specialist at Hutchinson Correctional Facility who handles inmate grievances submitted to the warden and the Corrections Manager in the KDOC Division of Facilities Management who handles inmate grievances submitted to the Secretary of Corrections. (ROA at 122-23). Both officials carefully reviewed their respective office's grievance records and found that Lindsey did not submit any grievances to the warden or appeal any grievances to the Secretary in December 2018 or all of 2019. (ROA at 122-23).

In response, Lindsey has provided various affidavits and statements of fact claiming he filed grievances at every level and did not receive any responses. (ROA at 130-32, 136, 139; Opening Br. at 6-7, 10). But as the district court found, Lindsey's affidavits are conclusory, unsupported, self-serving, and fail to create a genuine issue on exhaustion. (ROA at 164). *See Hall*, 935 F.2d at 1111 ("[C]onclusory and self-serving affidavits are not sufficient."); *L&M Enters., Inc. v. BEI*

*Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000) ("Unsupported conclusory allegations … do not create a genuine issue of fact.").

Lindsey does not state the specific persons to whom he allegedly submitted his grievances, how he submitted them, the date he submitted them, or any other details about them. (ROA at 130-31, 136; Opening Br. at 6-7, 10); *see* K.A.R. §§ 44-15-101(d)(1), 44-15-102(b), (c)(2). He has not provided any copies of his grievances, nor has he produced any receipts from his alleged submissions. He has not explained why he does not have any record of these grievances, other than his unsupported and novel claim that his receipts "came up missing when [a]ll Appellant's [p]roperty was seized by Staff." (Opening Br. at 11). *See id.* § 44-15-102(b)(2). Moreover, Lindsey has not indicated whether his grievances included the required content. *See id.* § 44-15-102(b)(1), (c)(1). This in spite of the fact that he was informed of the evidence and proof he was required to submit. (ROA at 142).

But even if this Court considers Lindsey's affidavits and factual assertions, the district court correctly determined that they do not create a triable issue on exhaustion. (ROA at 164). Lindsey did not create a triable issue because he failed to comply with the KDOC deadlines for exhausting its grievance process. "An inmate properly exhausts a claim

11

by utilizing each step the prison holds out for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules." *Gray v. Sorrels*, 818 Fed. Appx. 787, 789 (10th Cir. 2020) (relying on *Woodford*, 548 U.S. at 90).

Lindsey claims he filed his grievances through every level of review without ever receiving a response. (Opening Br. at 6-7). He provided an informal resolution request, dated December 12, 2018, but it contained no disposition. (ROA at 137). The KDOC regulations, however, state that "[i]f an inmate does not receive a response from the unit team within 10 calendar days, a grievance report may be sent to the warden[.]" K.A.R. § 44-15-102(a)(2). This is step two of the KDOC grievance process. *Id.* at § 44-15-102(b). The warden must answer the inmate's grievance within 10 working days of receiving it. *Id.* at § 44-15-102(b)(3)(A)(ii). Also under step two, if the inmate receives no response from the warden in the allotted time, he may send a grievance to the secretary of corrections with an explanation of the reason for the delay. *Id.* at § 44-15-102(b)(3)(G).

KDOC grievance step three provides for an appeal to the secretary of corrections. *Id.* at § 44-15-102(c). Specifically, the regulations provide,

> If the warden's answer is not satisfactory, the inmate may appeal to the secretary's office by indicating on the grievance appeal form exactly what the inmate is

displeased with and what action the inmate believes the secretary should take. The inmate's appeal shall be made within three calendar days of receipt of the warden's decision *or within three calendar days of the deadline for that decision*, whichever is earlier. (Emphasis added).

*Id.* at § 44-15-102(c)(1).

Based on his own affidavit, Lindsey sent a grievance to the warden and waited 20 days to file a grievance with the secretary of corrections. (ROA at 136). As noted above, the warden's deadline for responding to Lindsey grievance was 10 working days. Lindsey had three calendar days from that deadline to file his appeal with the secretary of corrections. *See* K.A.R. § 44-15-102(c)(1). By his own admission, he did not meet that deadline. (ROA at 136). On this basis, the district court properly found that Lindsey failed to exhaust his administrative remedies under the PLRA. (ROA at 165).

## C. Lindsay's administrative remedies were not rendered unavailable.

Lindsey insists that he "did exhaust all remedies, but his efforts were hindered by officials." (Opening Br. at 2). Specifically, he claims he completed the required steps in KDOC's grievance process, but the State's failure to respond to his filed grievances rendered his remedy unavailable. (Opening Br. at 8).

13

In *Jernigan*, this Court "agree[d] that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable." 304 F.3d at 1032. And in *Whitington v. Ortiz*, 472 F.3d 804, 807-08 (10th Cir. 2007), this Court stated that "when prison officials fail to timely respond to a grievance, the prisoner has exhausted 'available' administrative remedies under the PLRA." However, the Court in *Jernigan* also held that "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies," and "substantial compliance" is not enough. 304 F.3d at 1032.

Here, as the district court found, "[o]n the properly supported and not genuinely disputed record," Lindsey did not complete the KDOC grievance process. (ROA at 164). His conclusory and self-serving affidavits and factual assertions provide no basis for his claim that he filed a grievance with the warden and the secretary of corrections or an appeal with the secretary of corrections. The KDOC could not have issued responses to grievances or appeals that were never submitted. Lindsey's factual claims were correctly disregarded by the district court. (ROA at 163).

14

Moreover, a non-response by prison officials does not render Lindsey's remedies unavailable because the KDOC policy instructs him what to do if he gets no response. *See* K.A.R. §§ 44-15-101(b); 44-15-102(a)(2), (b)(3)(G), (c)(2). In *Jernigan*, the Court found that the inmate, although he did not receive a response from the warden, failed to exhaust his administrative remedies because he did not seek review at the next specified level. 304 F.3d at 1032-33. Likewise, the district court here noted that "by his own account, [Lindsey] was able to follow the KDOC's process for when officials do not respond for the first two levels of review." (ROA at 165, n. 4). However, as explained above, he failed to employ the KDOC's prescribed remedies, and thus, did not exhaust them.

*Whitington* also provides no help to Lindsey. In that case, the inmate pursued his administrative remedies through Colorado's entire three-step grievance process, but did not receive a timely response after he completed the final step. 472 F.3d at 806-07. The Court stated that "a prisoner cannot be required to wait indefinitely for a response to his *final* grievance before he may seek judicial review." (Emphasis added). *Id*. at 807. Thus, Colorado's failure to timely respond to the inmate's completion of the final step of the grievance process meant the inmate "effectively exhausted his administrative remedies." *Id*. at 808.

15

By contrast, Lindsey did not follow the KDOC deadlines up to the final step, even though the KDOC remedies were at all times available to him. Further, Lindsey's contention that he completed all steps of the grievance process means his efforts to complete the process were not hindered. This Court should affirm the district court's finding that Lindsey failed to exhaust his administrative remedies.

### D. Lindsey's personal injury claim does not save his § 1983 claim.

Lindsey appears to argue that because his personal injury claim was reviewed at the highest level, he has exhausted his administrative remedies for his § 1983 claim, or at least "created a material issue of fact." (Opening Br. at 8-9, 11). But "[t]he KDOC provides separate procedures for § 1983 and personal injury claims." *Nunez v. Heimgartner*, Case No. 15-3259-EFM-DJW, 2017 WL 2264466, at *5 (D. Kan. May 24, 2017). Under the Kansas Administrative Regulations, an inmate cannot exhaust his remedies for a § 1983 claim based on his use of the personal injury procedures. *See* K.A.R. § 44-16-104a; *Nunez*, 2017 WL 2264466 at *5 ("[A]n inmate who wishes to pursue both a personal injury claim and a § 1983 claim must comply with two distinct sets of administrative procedures even if he bases his claims on a single act.").

Lindsey failed to exhaust his administrative remedies for his § 1983 claim. The district court correctly found that his "personal injury claim based on the same incident does not count as exhaustion of his § 1983 claim." (ROA at 162).

## CONCLUSION

For the foregoing reasons, Cook respectfully asks this Court to affirm the district court's February 4, 2021 order granting summary judgment in his favor.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s/ *Michael J. Duenes*
Michael J. Duenes
Assistant Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612-1597
Tel: (785) 296-2215
Fax: (785) 291-3767
Email: michael.duenes@ag.ks.gov
*Attorney for Defendant-Appellee*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 3,324 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(b), as calculated by the word-counting function of Microsoft Word.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface—14-point Century Schoolbook—using Microsoft Word.

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that a copy of the foregoing BRIEF OF DEFENDANT-APPELLEE, as submitted in digital form via the court's ECF system, is an exact copy of the written document filed with the Clerk.

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2021, the foregoing BRIEF OF DEFENDANT-APPELLEE was electronically filed with the Clerk of the Tenth Circuit Court of Appeals using the CM/ECF system. I certify that I caused seven paper copies to be delivered by Federal Express to the Clerk's Office within five business days of this filing. I further certify that I cause one paper copy to be deposited in the United States Mail, first-class postage prepaid to:

Mr. Jeremy J. Lindsey, # 92451
Lansing Correctional Facility
301 E. Kansas Ave.
Lansing, KS 66043
*Appellant Pro Se*

DATED: December 6, 2021          */s/ Michael J. Duenes*
                                 Michael J. Duenes
                                 Assistant Attorney General

18

# ATTACHMENTS

## 10th Cir. R. 28.2(B) ATTACHMENTS

Addendum A          District Court Order (Doc. 43)

Addendum B          Judgment (Doc. 44)

Addendum C          District Court Order (Doc. 73)

## Fed. R. App. P. Rule 28(f) ATTACHMENTS

Addendum D          K.A.R. §§ 44-15-101; 44-15-102

Addendum E          D. Kan. Rule 56.1

Addendum F          Fed. R. Civ. P. 56

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**JEREMY J. LINDSEY,**

   **Plaintiff,**

   **v.**          **Case No. 5:19-cv-03094-HLT**

**RUSSELL COOK,**

   **Defendant.**

## <u>ORDER</u>

Plaintiff Jeremy J. Lindsey brings this 42 U.S.C. § 1983 action pro se[1] and alleges that Corrections Officer Russell Cook ("Defendant") violated his Eighth Amendment rights while he was incarcerated at Hutchinson Correctional Facility ("HCF"). The crux of Plaintiff's allegations is that he was subjected to cruel and unusual punishment on December 11, 2018, when Defendant put him in a chokehold without cause. Plaintiff alleges that Defendant ordered him to his cell, and Plaintiff instantly complied. As he approached his cell, Defendant attacked him from behind and put him in a chokehold that caused injury to his neck.

Defendant moves for summary judgment on Plaintiff's § 1983 claim for failure to exhaust administrative remedies and moves to dismiss Plaintiff's state law claims for lack of jurisdiction. The Court agrees that Plaintiff failed to exhaust his administrative remedies and grants summary judgment on Plaintiff's § 1983 claim. The Court declines to exercise supplemental jurisdiction on the remaining state law claims and dismisses those claims without prejudice.

---

[1] The Court is mindful of Plaintiff's pro se status and liberally construes his pleadings and holds them to a less stringent standard than formal pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court does not, however, assume the role of advocate. *Id.*

The Court starts with Defendant's motion for summary judgment. Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact" and he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, courts must view the facts and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Defendant contends that he is entitled to summary judgment on Plaintiff's § 1983 claim because Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). The PLRA requires an inmate to exhaust available administrative remedies. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Exhaustion is mandatory, and unexhausted claims cannot be brought in court. *See Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (quoting *Jones v. Bock*, 549 U.S. 199, 211 (2007))).

An inmate exhausts by complying with "an agency's deadlines and other critical procedural rules." *Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). But the PLRA only requires the exhaustion of "available" administrative remedies. *Id.* "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy

unavailable and a court will excuse the prisoner's failure to exhaust." *Id.* (internal quotation omitted). It is the defendant's burden to prove that administrative remedies were available and that the plaintiff failed to exhaust them. *Lewis v. Carrell*, 2014 WL 4450147, at *10 (D. Kan. 2014).

Here, the relevant agency is the KDOC, and the relevant deadlines and procedural rules for § 1983 claims are contained in Kansas Administrative Regulations § 44-15-101 *et seq. See* § 44-15-101a(d)(1)(A)-(B) (governing "inmate grievances" concerning policies and conditions of imprisonment, actions of employees and other inmates, and incidents occurring within the facility); *see also Lewis*, 2014 WL 4450147, at *5 (finding that K.A.R. § 44-15-101a *et seq.* governed a prisoner's § 1983 claim). The KDOC has a four-part grievance process. *See* K.A.R. § 44-15-101(b), (d). First, the inmate must attempt "to reach an informal resolution of the matter with the personnel who work with the inmate on a direct or daily basis." *Id.* § 44-15-101(b). If informal resolution fails, the inmate must submit a "grievance report form" through three levels of review, beginning with an appropriate unit team member within the correctional facility, then the warden, and last the office of the secretary of corrections. *Id.* § 44-15-101(d)(1)-(3).[2]

Defendant argues that Plaintiff failed to exhaust these available remedies. He concedes that Plaintiff may have submitted a proposed informal resolution. But he contends that Plaintiff did not complete the review process because Plaintiff did not submit the grievance report form to the appropriate unit team member within the correctional facility, the warden, or the office of the secretary of corrections. He supports his argument with affidavits from personnel in the warden's and secretary of corrections's offices. They attest that they reviewed Plaintiff's grievance records

---

[2]   There is a separate procedure for personal injury claims. *See* K.A.R. § 44-16-104a(a) (stating that each claim for personal injury shall be submitted to the facility and secretary of corrections within 10 days of the claimed injury). Inmates pursuing both a personal injury claim and a § 1983 claim must comply with both sets of administrative procedures, even when the claims are based on the same incident. *Lewis*, 2014 WL 4450147, at *6. Accordingly, Plaintiff's personal injury claim based on the same incident does not count as exhaustion of his § 1983 claim.

and that he did not submit any grievances to either the warden or secretary of corrections in December 2018 or the year of 2019. Because Plaintiff did not complete KDOC's review process, Defendant contends that Plaintiff failed to exhaust his remedies and summary judgment is appropriate. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (holding an inmate failed to exhaust his administrative remedies when he did not complete all three required written steps).

Plaintiff responds that he did exhaust because he submitted his grievance through every level of review without receiving a response. But there are several problems with Plaintiff's argument.[3] First, Plaintiff's response does not comply with the federal or local rules. Plaintiff did not properly respond to Defendant's statement of facts as required by Fed. R. Civ. P. 56(c) and D. Kan. Rule 56.1(b)(1). Relatedly, he did not set out separately numbered additional material facts and support them as required by Fed. R. Civ. P. 56(c) and D. Kan. Rule 56.1(b)(2). Plaintiff's pro se status does not excuse his noncompliance especially because Defendant complied with D. Kan. Rule 56.1(f) and sent Plaintiff the required notice for motions for summary judgment. Thus, the Court deems Defendant's facts admitted and disregards Plaintiff's factual contentions. *Canady v. Gen. Motors Corp.*, 368 F. Supp. 2d 1151, 1155 (D. Kan. 2004). On the properly supported and not genuinely disputed record, Plaintiff has not shown a triable issue about exhaustion.

---

[3]   After Defendant replied, Plaintiff filed a surreply (Doc. 35) and a document tiled "Judicial Notice" (Doc. 37). Defendant moves to strike both documents because Plaintiff did not seek leave and did not offer a reason why an additional filing should be permitted. Docs. 36 and 39. Under D. Kan. Rule 7.1(c), briefing on motions is limited to a motion, a supporting memorandum, a response, and a reply. Leave to file a surreply is only granted in "rare circumstances." *Dodson Int'l Parts, Inc. v. Williams Int'l Co., LLC*, 2020 WL 4904049, at *1 (D. Kan. 2020) (citation omitted). Plaintiff fails to identify any such circumstances, so the Court grants Defendant's motions and strikes these filings.  Plaintiff next seeks leave to add a memorandum. Doc. 40. But Plaintiff again fails to explain why he should be allowed to file an additional memorandum, and the Court does not discern an appropriate reason. The Court denies his motion. Regardless, even if the Court considered all three documents and arguments, they do not change the outcome of the summary judgment motion.

Second, even if the Court excused Plaintiff's noncompliance, Plaintiff still fails to create a genuine issue of material fact. He argues that his administrative remedies should be deemed exhausted because he submitted his grievances through every level of review without ever receiving a response. He attaches an informal resolution proposal with no disposition and a notarized affidavit outlining his compliance. *See* Doc. 32 at 7-8. The affidavit states that he filed an informal resolution on December 12, 2018. After 10 days with no response, he filed a grievance. After 15 days with no response, he filed a grievance directing it to go to the warden. After 20 days with no response, he sent another grievance to the secretary of corrections, explaining that he had not received a response from the warden. Plaintiff waited over 35 more days before sending the affidavit to the HCF warden and secretary of corrections. Plaintiff attests that, as of October 22, 2020, the warden and secretary still had not responded to his grievances or affidavit.

But his affidavit is conclusory, self-serving, and fails to create a genuine issue about exhaustion.  Plaintiff's affidavit does not specify to whom he submitted his first grievance or how he delivered his appeals. *See* K.A.R. §§ 44-15-101(d)(1), 44-15-102(b), (c)(2). He does not provide copies of the grievances or explain why he may not have copies or receipts. *See id.* § 44-15-102(b)(2). Finally, he does not specify whether the grievances contained the required content or include any other details about the contents of his grievances. *See id.* § 44-15-102(b)(1), (c)(1). His conclusory and self-serving affidavit is not enough to withstand summary judgment. *Hall*, 935 F.2d at 1111. To find otherwise on this record potentially renders the exhaustion process a nullity.

Even if the Court considered his affidavit, Plaintiff still does not create a triable issue on exhaustion. The KDOC's regulations provide that the warden shall answer the inmate within 10 days from receiving a grievance. K.A.R. § 44-15-102(b)(3)(A)(ii). If the warden fails to timely respond, the inmate has 3 days to appeal to the secretary of corrections. *Id.* § 44-15-102(c)(1). By

his own account, Plaintiff sent a grievance to the warden and waited 20 days before sending a grievance to the secretary of corrections. By his own admission, he did not comply with the timeline and he provides no authority excusing this noncompliance. *See Jernigan*, 304 F.3d at 1032-33 (explaining that the doctrine of substantial compliance is inapplicable).[4] For all of these reasons, the Court finds that Defendant is entitled to summary judgment in his favor on Plaintiff's § 1983 claim because Plaintiff failed to exhaust his administrative remedies under the PLRA.

Defendant also asks the Court to dismiss Plaintiff's state law claims for lack of subject matter jurisdiction. The Court has resolved the claim over which it had original jurisdiction, the remaining claims involve issues of state law, and this case is in the early stages. *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1231 (10th Cir. 2020) (noting the regular practice of dismissing without prejudice state-law claims, for which the district court has only supplemental jurisdiction, when the federal-law claims, to which they are supplemental, are dismissed early in the litigation). The Court declines to exercise supplemental jurisdiction over these claims and dismisses them without prejudice.

THE COURT THEREFORE ORDERS that Defendant's motion to dismiss in part and for summary judgment in part (Doc. 20) is GRANTED. The Court GRANTS summary judgment in Defendant's favor on Plaintiff's § 1983 claim.  The Court DISMISSES WITHOUT PREJUDICE Plaintiff's remaining state law claims because the Court declines to exercise supplemental jurisdiction.

---

[4]   Somewhat inconsistently, Plaintiff alternatively argues that the failure to respond at every level hindered his efforts and rendered the administrative remedies unavailable. But, by his own account, he was able to follow the KDOC's process for when officials do not respond for the first two levels of review. *Compare id.* at 1032-33 (finding that although the failure to respond to grievances renders an administrative remedy unavailable, a prisoner failed to exhaust because he did not seek review at the next level). Plaintiff cites *Whitington v. Ortiz*, 472 F.3d 804, 807-08 (10th Cir. 2007), which held that an inmate exhausted his available administrative remedies when the correctional facility failed to timely respond to his <u>final</u> appeal. But, unlike in *Ortiz*, Plaintiff failed to follow the KDOC deadlines up to the final appeal. *See id.* at 806.

THE COURT FURTHER ORDERS that Defendant's motion to strike (Doc. 36) is GRANTED. The Court strikes Doc. 35 from the record.

THE COURT FURTHER ORDERS that Defendant's motion to strike (Doc. 39) is GRANTED. The Court strikes Doc. 37 from the record.

THE COURT FURTHER ORDERS that Plaintiff's motion for leave (Doc. 40) is DENIED. This case is closed.

IT IS SO ORDERED.

Dated: February 4, 2021                    /s/  *Holly L. Teeter*
                                           HOLLY L. TEETER
                                           UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**JEREMY J. LINDSEY,**

        **Plaintiff,**

**v.**                                                 **Case No. 19-3094-HLT**

**RUSSELL COOK,**

        **Defendant.**

## JUDGMENT IN A CIVIL CASE

**( )**    **JURY VERDICT.**  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

**(x)**    **DECISION BY THE COURT.**  This action came before the Court.  The issues have been considered and a decision has been rendered.

      **IT IS ORDERED AND ADJUDGED** that Defendant's motion to dismiss in part and for summary judgment in part is granted. The Court grants summary judgment in Defendant's favor on Plaintiff's § 1983 claim. The Court dismisses without prejudice Plaintiff's remaining state law claims because the Court declines to exercise supplemental jurisdiction.

Entered on the docket 02/04/21

**Dated:  February 4, 2021**        **TIMOTHY M. O'BRIEN**
                                           **CLERK OF THE DISTRICT COURT**

                                           **s/S. Nielsen-Davis**
                                           **Deputy Clerk**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

**JEREMY J. LINDSEY,**

      **Plaintiff,**

      **v.**

        **Case No. 5:19-cv-03094-HLT**

**RUSSELL COOK,**

      **Defendant.**

### <u>ORDER</u>

Plaintiff Jeremy Lindsey brought this 42 U.S.C. § 1983 action pro se[1] alleging that Defendant Corrections Officer Russell Cook violated his Eighth Amendment rights while he was incarcerated at Hutchinson Correctional Facility. On February 4, 2021, the Court granted Defendant's motion for summary judgment on Plaintiff's § 1983 claim for failure to exhaust administrative remedies. The Court declined to exercise supplemental jurisdiction on the remaining state law claims and dismissed those claims without prejudice. Doc. 43. Before the Court is Plaintiff's motion to reconsider. Doc. 48.[2] For the reasons stated below, the Court finds that Plaintiff has not presented any valid grounds for reconsidering its summary judgment order and denies Plaintiff's motion.

## I.     STANDARD

District of Kansas Rule 7.3 requires motions seeking reconsideration of dispositive orders or judgments to be brought pursuant to Rule 59(e) or 60. D. Kan. R. 7.3(a); *see also Progressive*

---

[1]   The Court is mindful of Plaintiff's pro se status and liberally construes his pleadings and holds them to a less stringent standard than formal pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court does not, however, assume the role of advocate. *Id.*

[2]   Although Plaintiff has already filed a notice of appeal (Doc. 45), the Tenth Circuit has abated it (Doc. 59) pending this Court's resolution of Plaintiff's motion.

*Nw. Ins. Co. v. Gant*, 2018 WL 4600716, at *8 (D. Kan. 2018), *aff'd*, 957 F.3d 1144 (10th Cir. 2020). Since Plaintiff has brought this motion within 28 days of the entry of judgment, the Court construes it as a Rule 59(e) motion. *See Hayes Family Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004 (10th Cir. 2017) ("No matter how styled, a motion will be deemed a Rule 59(e) motion if it is served within the specified time period and seeks relief appropriate to Rule 59(e) by questioning the correctness of the underlying judgment.")

Grounds warranting relief under Rule 59(e) include: (1) an intervening change in controlling law, (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence, and (3) the need to correct clear error or prevent manifest injustice. *Brinkman v. Norwood*, 2018 WL 1806758, at *1 (D. Kan. 2018); *see also Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Such a motion is appropriate if a court has misunderstood the facts, arguments, or controlling law. *Servants of the Paraclete*, 204 F.3d at 1012. But it is not a vehicle to "revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* Nor is it "a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994).

## II.   ANALYSIS

Plaintiff's arguments for reconsideration fall under the third ground for relief: the need to correct clear error or prevent manifest injustice. In its order, the Court found that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). As set forth in the PLRA, Plaintiff was required to satisfy a four-part grievance process. *See* K.A.R. § 44-15-101(b), (d). The grievance process requires an inmate to attempt "to reach an informal resolution of the matter with the personnel who work with the inmate on a direct

or daily basis." *Id.* § 44-15-101(b). If informal resolution fails, the inmate must submit a "grievance report form" through three levels of review, beginning with an appropriate unit team member within the correctional facility, then the warden, and lastly the office of the secretary of corrections. *Id.* § 44-15-101(d)(1)-(3).

Defendant conceded that Plaintiff may have submitted a proposed informal resolution. But he contended that Plaintiff did not complete the review process because Plaintiff did not submit the grievance report form to the appropriate unit team member within the correctional facility, the warden, or the office of the secretary of corrections. He supported his argument with affidavits from personnel in the offices of the warden and secretary of corrections. They attested that they reviewed Plaintiff's grievance records and that he did not submit any grievances to either the warden or secretary of corrections during the relevant period. Because Plaintiff did not complete KDOC's review process, the Court found that Plaintiff failed to exhaust his remedies and that summary judgment was appropriate. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (holding an inmate failed to exhaust his administrative remedies when he did not complete all three required written steps).

In reaching this conclusion, the Court found that Plaintiff's response to Defendant's motion did not comply with the federal or local rules and so deemed Defendant's facts admitted and disregarded Plaintiff's factual contentions. *Arguendo*, the Court found that Plaintiff's affidavit attesting to exhaustion was conclusory, self-serving, and failed to create a genuine issue about exhaustion. Finally, the Court found that, even if it considered Plaintiff's affidavit, by his own account, Plaintiff failed to properly exhaust.

In his motion to reconsider, Plaintiff argues that the Court erred by (1) not finding Defendant's affidavits in support of summary judgment conclusory and self-serving; (2) excusing

Defendant's failure to produce the KDOC's exhaustion procedures; (3) finding that Plaintiff's administrative remedies were available; (4) finding that pursuing every avenue for appeal was mandatory; and (5) finding a three-day deadline to appeal to the secretary of corrections after the deadline for the warden's response passes.[3] The Court disagrees with Plaintiff and finds that reconsideration of its grant of summary judgment is not appropriate because (1) Plaintiff either rehashes old arguments or raises new arguments that could have been raised in prior briefing and (2) otherwise fails to persuade the Court that its summary judgment order was incorrect.

Plaintiff's first and second arguments challenging the sufficiency of Defendant's affidavits and contending that Defendant was required to attach a copy of the KDOC's exhaustion procedures could have been raised in Plaintiff's response to the summary judgment motion. *Servants of the Paraclete*, 204 F.3d at 1012. Regardless, they are meritless. The affidavits were sufficient and included information about reviewing records rather than just an unsupported statement that a grievance was not received, and a summary judgment movant need not attach statutes or regulations that are publicly available. *See Ray v. Aztec Well Serv. Co.*, 748 F.2d 888, 889 (10th Cir. 1984) ("This court can take judicial notice of agency rules and regulations."); *Burkhart v. Timme*, 2013 WL 317544, at *3 (D. Colo. 2013) (taking judicial notice of the fact that the Colorado Department of Corrections's administrative regulations are public records).

---

[3]   After Defendant responded, Plaintiff filed a motion entitled "Judicial Notice" (Doc. 56), which the Court construes as a reply. Plaintiff then filed a "Judicial Notice of Legal Error," which functions as a surreply. Doc. 58. Defendant moves to strike the filing because Plaintiff did not seek leave and did not offer a reason why an additional filing should be permitted. Doc. 60. As the Court noted in its summary judgment order (Doc. 43 at 4 n.3), under D. Kan. Rule 7.1(c), briefing on motions is limited to a motion, a supporting memorandum, a response, and a reply. Leave to file a surreply is only granted in "rare circumstances." *Dodson Int'l Parts, Inc. v. Williams Int'l Co., LLC*, 2020 WL 4904049, at *1 (D. Kan. 2020) (citation omitted). Plaintiff fails to identify any such circumstances, so the Court grants Defendant's motion and strikes this filing. Regardless, even if the Court considered Plaintiff's filing, it would not change the outcome of the motion for reconsideration. Alternatively, if Plaintiff intended the filing to be a Rule 60(b) motion, it is still meritless. Plaintiff has not shown fraud, misrepresentation, or misconduct by Defendant. He has only shown his own disagreement with Defendant's conduct. And he has not shown any of the other grounds for relief outlined in Rule 60(b).

Plaintiff's third argument rehashes his argument that his administrative remedies were rendered unavailable by prison officials' failure to respond. He observes that Defendant did not dispute that his informal resolution was not answered. But Plaintiff does not address his response brief's failure to comply with the federal and local rules and the deficiencies in his affidavits. Regardless, although Defendant did not dispute that Plaintiff filed an informal resolution, which was not answered, the KDOC's procedures provided for next level review in such an event. *See* K.A.R. § 44-15-101(b).

Plaintiff's fourth argument is that, under the KDOC grievance procedures, if he did not receive a response, he was not required to pursue the next step of review. Plaintiff could have raised this argument in his response to the summary judgment motion but did not. Regardless, his argument is not persuasive. Plaintiff observes that the KDOC procedures provide that an inmate "may" move to the next step of review if no response is made within the time limits. *See id.* at § 44-15-102(a)(2), (b)(3)(G). The steps are optional in that the inmate can choose to abandon his claim, but the deadlines are mandatory. *See id.* at § 44-15-102. And "[t]o meet the PLRA's exhaustion requirement, an inmate must 'use[ ] all steps that the agency holds out' in 'compliance with an agency's deadlines and other critical procedural rules.'" *Gray v. Sorrels*, 818 F. App'x 787, 791 (10th Cir. 2020) (alteration in original) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).

Plaintiff's fifth argument is that Defendant misled the Court on the existence of a grievance deadline that Plaintiff did not meet by his own account. Plaintiff improperly raised this argument in his stricken surreply to Defendant's motion for summary judgment. This motion to reconsider is not a vehicle for repackaging an old argument or presenting a new argument. Regardless, as discussed above, this argument is unpersuasive because of the other deficiencies in Plaintiff's

response and his failure to create a genuine issue of material fact on exhaustion at all levels of review. And, even putting aside the deficiencies, Plaintiff does not convince the Court that it erred.

The Court agrees with its ruling on Plaintiff's motion for reconsideration in Case No. 19-03094 and finds that Plaintiff has failed to show: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error to prevent manifest injustice. *See* D. Kan. Rule 7.3(b). Therefore, reconsideration of the Court's February 4, 2021 Order at Doc. 43 is not warranted.

## III.   CONCLUSION

THE COURT THEREFORE ORDERS that Plaintiff's motion for reconsideration (Doc. 48) is DENIED.

THE COURT FURTHER ORDERS that Defendant's motion to strike (Doc. 60) is GRANTED. The Court strikes Doc. 58 from the record.

IT IS SO ORDERED.

Dated: June 16, 2021                    /s/ *Holly L. Teeter*
                                        HOLLY L. TEETER
                                        UNITED STATES DISTRICT JUDGE

# Kan. Admin. Regs. § 44-15-101

Section 44-15-101 - Inmate or parolee grievance procedure; informal resolution; formal levels

**(a)** Throughout this article comprising the grievance procedure, all references to inmates shall include parolees, offenders, or both, supervised on either conditional release or postrelease supervision unless the meaning is clearly to the contrary. References to parolees shall include offenders supervised on either conditional or postrelease supervision. References to the warden shall include the parole director. The unit team equivalent shall be the parole officer.

**(b)** Before utilizing the grievance procedure, the inmate shall be responsible for attempting to reach an informal resolution of the matter with the personnel who work with the inmate on a direct or daily basis. An inmate in a facility or parole setting shall contact the unit team members for the attempt at informal resolution. That attempt shall be documented. The facility's inmate request forms may be used to document this process. If this informal resolution attempt fails, the grievance system may then be used. If an emergency exists and a resolution could not be obtained by going to the unit team, the inmate may go directly into the grievance process.

**(c)** At each stage, all grievances shall be answered in as short a time as possible to insure that delay will not impose additional hardship upon the inmate or unnecessarily prolong a misunderstanding. Grievances of inmates who have since been transferred, paroled, or discharged shall be answered to the extent possible.

**(d)** The grievance procedure shall incorporate several levels of problem solving to assure solution at the lowest administrative level possible.

**(1)** Level 1. The inmate shall first submit the grievance report form to an appropriate unit team member of the facility. The parolee shall first submit the form to the parole officer.

**(2)** Level 2. The inmate shall then submit the grievance report form to the warden of the facility. The parolee shall then submit the form to the regional parole director.

**(3)** Level 3. If not resolved, the grievance may be next submitted to the office of the secretary of corrections. Either a response to the grievance or referral of the matter to a deputy secretary of corrections for additional investigation, if necessary, shall be made by the warden. Grievances of inmates may be referred by the secretary to the deputy secretary of corrections for facility management. Grievances of parolees may be referred by the secretary to the deputy secretary of corrections for community and field services management.

**(e)** Inmate grievance report forms and appeal forms shall be made available to all inmates. Grievance forms and appeal forms shall be provided in containers in each inmate living unit and on each segregation wing or tier. The unit team shall assist the inmate in obtaining copies of supporting material necessary to complete the grievance if the number of photocopies requested by the inmate is reasonable.

**(f)** No staff member shall refuse to sign, date, and return an inmate request form, an inmate grievance form, or a grievance receipt slip showing that the inmate came to that person for

assistance.

**(g)** Each inmate shall be entitled to invoke the grievance procedure. The procedure shall be made accessible to mentally impaired and physically handicapped inmates by the warden. This amendment shall be effective on and after February 15, 2002.

*Kan. Admin. Regs. § 44-15-101*

Authorized by and implementing K.S.A. 75-5210, K.S.A. 75-5251; effective May 1, 1980; amended May 1, 1984; amended May 1, 1987; amended April 20, 1992; amended Feb. 15, 2002.

 casetext

casetext

Help    Sign In    Sign Up

Search all cases and statutes...                                    JX

Statutes, codes, and regulations

Kansas Administrativ...

Agency 44 - DEPART...

Article 15 - GRIEVAN...

# Kan. Admin. Regs. § 44-15-102

⬇ Download

Current through Register Vol. 40, No. 47, November 25, 2021

Section 44-15-102 - Procedure

(**a**) Grievance step one: preliminary requirement; informal resolution and problem solving at unit team level.

(**1**) Each inmate shall first seek information, advice, or help on any matter from the inmate's unit team, or from a member of the team. If unable to solve the problem, the unit team shall refer the inmate to the proper office or department. The unit team shall assist those inmates who are unable to complete the form themselves.

(**2**) If an inmate does not receive a response from the unit team within 10 calendar days, a grievance report may be sent to the warden without the unit team signature or signatures. Each grievance report form shall include an explanation of the absence of the signature or signatures.

(**b**) Grievance step two: complaint to the warden. If any inmate receives a response but does not obtain a satisfactory solution to the problem through the informal resolution process within 10 calendar days, the inmate may fill out an inmate grievance report form

Appellate Case: 21-3025      Document: 010110614860      Date Filed: 12/06/2021      Page: 42

and submit it, within three calendar days after the deadline for informal resolution, to a staff member for transmittal to the warden.

(**1**) The inmate shall attach a copy of each inmate request form used to attempt to solve the problem and shall indicate on the inmate grievance report the following information:

(**A**) A specific complaint that states what or who is the subject of the complaint, related dates and places, and what effect the situation, problem, or person is having on the inmate that makes the complaint necessary;

(**B**) the title and number, if possible, of any order or regulation that could be the subject of the complaint;

(**C**) the action that the inmate wants the warden to take to solve the problem;

(**D**) the name and signature of the responsible institution employee or employees or of the parole officer from whom the inmate sought assistance. This signature shall be on either an inmate request form or the grievance report form. The date on which the help was sought shall be entered by the employee on the form; and

(**E**) the date on which the completed grievance report was delivered to the staff member for transmittal to the office of the warden.

(**2**) The staff member shall forward the report to the warden before the end of the next working day and shall give a receipt to the inmate.

(**3**) Warden's response.

(**A**)

(**i**) Upon receipt of each grievance report form, a serial number shall be assigned by the warden or designee, and the date of receipt shall be indicated on the form by the warden or designee. The nature of the grievance shall be ascertained by the warden or designee.

(**ii**) Each inmate grievance shall be returned to the inmate, with an answer, within 10 working days from the date of receipt.

(**B**) Each answer shall contain findings of fact, conclusions drawn, the reasons for those conclusions, and the action taken by the warden. Each answer shall inform the

Appellate Case: 21-3025      Document: 010110614860      Date Filed: 12/06/2021      Page: 43

inmate that the inmate may appeal by submitting the appropriate form to the secretary of corrections.

(C) In all cases, the original and one copy of the grievance report shall be returned by the warden to the inmate. The copy shall be retained by the inmate for the inmate's files. The original may be used for appeal to the secretary if the inmate desires. The necessary copies shall be provided by the warden.

(D) A second copy shall be retained by the warden.

(E) Each facility shall maintain a file on grievance reports indexed by inmate name and subject matter. Grievance report forms shall not be placed in the inmate's institution file.

(F) Any grievance report form may be rejected by the warden if the form does not document any unit team action as required for the preliminary informal resolution process. The grievance report form shall then be sent back to the unit team for an immediate answer to the inmate.

(G) If no response is received from the warden in the time allowed, any grievance may be sent by an inmate to the secretary of corrections with an explanation of the reason for the delay.

(c) Grievance step three: appeal to the secretary of corrections.

(1) If the warden's answer is not satisfactory, the inmate may appeal to the secretary's office by indicating on the grievance appeal form exactly what the inmate is displeased with and what action the inmate believes the secretary should take. The inmate's appeal shall be made within three calendar days of receipt of the warden's decision, or within three calendar days of the deadline for that decision, whichever is earlier.

(2) The appeal shall then be sent directly and promptly by U.S. mail to the department of corrections central office in Topeka.

(3) When an appeal of the warden's decision is made to the secretary, the secretary shall then have 20 working days from receipt to return the grievance report form to the inmate with an answer. The answer shall include findings of fact, conclusions made, and actions taken.

Appellate Case: 21-3025     Document: 010110614860     Date Filed: 12/06/2021     Page: 44

(4) If a grievance report form is submitted to the secretary without prior action by the warden, the form may be returned to the warden. If the warden did not respond in a timely manner, the form shall be accepted by the secretary.

(5) An appropriate official may be designated by the secretary to prepare the answer.

(d) General provisions: page limits; partial responses; repetitive filings.

(1) At each step of the grievance procedure, the total number of pages of inmate grievance text shall not exceed 10 pages. Text appearing on the front and back of a page shall count as two pages. Any page of text beyond 10 pages shall not be considered when determining the merits of the grievance.

(2) Responding to parts of grievances that are procedurally or substantively appropriate shall not constitute a waiver of defects with the remaining parts of the grievance that are not procedurally or substantively appropriate.

(3) No offender shall abuse the grievance system by repeatedly filing the same complaint.

(A) Each offender who has been identified as being abusive of the grievance system by filing the same complaint on more than one occasion shall be notified in writing of this finding by the warden or secretary's designee responsible for responding to inmate grievance appeals who receives the repeated filing.

(i) The notification shall be given at the time of the repeated filing.

(ii) The repeated filing shall be returned to the offender with the notification but without further substantive response.

(iii) The notification shall contain reference to the matter of which the grievance is repetitive.

(B) If, following this notification, an offender continues to file the same complaint, the warden or secretary's designee may make application to the secretary to impose sanctions to remedy the abuse.

(C) Upon the finding by the secretary of an abusive filing, a fee of not more than five dollars may be imposed on the offender.

(D) Any application for sanctions submitted to the secretary by a warden or secretary's designee for consideration may be referred by the secretary to a designee other than a

person responsible for responding to grievance or grievance appeals.

*Kan. Admin. Regs. § 44-15-102*

Authorized by and implementing K.S.A. 75-5210, K.S.A. 75-5251; effective May 1, 1980; amended May 1, 1984; amended May 1, 1985; amended May 1, 1988; amended April 20, 1992; amended Feb. 15, 2002; amended June 1, 2007.

---

Previous Section
[Section 44-15-101b - Time limit for filing grievance](#)

Next Section
[Section 44-15-103 - Reserved](#)

---

Make your practice more effective and efficient with Casetext's legal research suite.

Get a Demo

---

**Casetext research**

**Parallel Search**

**Compose**

---

Pricing

Switch

Big firm

Coverage

Appellate Case: 21-3025      Document: 010110614860      Date Filed: 12/06/2021      Page: 46

SmartCite

Public records search

Partnerships and Resources

Law school access

Bar associations

About us

Jobs

Blog

Podcast

News

Twitter

Facebook

LinkedIn

Instagram

Help articles

Customer support

Contact sales

Privacy

Terms

© 2021 Casetext Inc.

Casetext, Inc. and Casetext are not a law firm and do not provide legal advice.

## RULE 54.2
## AWARD OF STATUTORY ATTORNEY'S FEES

**(a)    Consultation Required.**  A party who moves for  statutory attorney's fees pursuant to Fed. R. Civ. P. 54(d)(2) must promptly initiate consultation with the other party or parties.

**(b)    Where the Parties Agree.**  If the parties reach agreement, they must file an appropriate stipulation and request for an order.

**(c)    Where the Parties Disagree.**  If they are unable to agree, the moving party must file the following within 30 days of filing the motion:

> (1)    a statement that, after consultation in accordance with this rule, the parties have been unable to reach an agreement with regard to the fee award; and

> (2)    a memorandum setting forth the factual basis for each criterion that the court is asked to consider in making an award.

**(d)    Statement of Consultation.**  The statement of consultation must set forth the date of the consultation, the names of those who participated, and the specific results achieved.

The court will not consider a motion for statutory attorney's fees made pursuant to Fed. R. Civ. P. 54(d)(2) until the moving party files the statement of consultation in compliance with this rule.

**(e)    Memorandum and Response.**  The memorandum in support of Fed. R. Civ. P. 54 motion must be supported by time records, affidavits, or other evidence.  The memorandum need not be filed at the same time as the motion.  This is an exception to D. Kan. Rule 7.1(a).  Other parties have 14 days to file a response to the memorandum in compliance with this rule.

**(f)    Discovery.**  Discovery may not be conducted in connection with motions for awards of attorney's fees unless the court permits upon motion and for good cause.

* * *

## RULE 56.1
## MOTIONS FOR SUMMARY JUDGMENT

**(a)    Supporting Memorandum.**  The memorandum or brief in support of a motion for summary judgment must begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists.  The facts must be numbered and must refer with particularity to those portions of the record upon which movant relies.  All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

**(b)    Opposing Memorandum.**

> (1)    A memorandum in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists.  Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed.

> (2)    If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above.  All material facts set forth in this statement of the non-moving party will be deemed admitted for the

50

purpose of summary judgment unless specifically controverted by the reply of the moving party.

**(c)     Reply Memorandum.**  In a reply brief, the moving party must respond to the non-moving party's statement of additional material facts in the manner prescribed in subsection (b)(1).

**(d)     Presentation of Factual Material.**  All facts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions.  Affidavits or declarations must be made on personal knowledge and by a person competent to testify to the facts stated that are admissible in evidence.  Where facts referred to in an affidavit or declaration are contained in another document, such as a deposition, interrogatory answer, or admission, a copy of the relevant excerpt from the document must be attached.

**(e)     Duty to Fairly Meet the Substance of the Matter Asserted.**  If the responding party cannot truthfully admit or deny the factual matter asserted, the response must specifically set forth in detail the reasons why.  All responses must fairly meet the substance of the matter asserted.

**(f)     Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion.**  Any represented party moving for summary judgment against a party proceeding pro se must serve and file as a separate document, together with the papers in support of the motion, the following "Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment" with the full texts of Fed. R. Civ. P. 56 and D. Kan. Rule 56.1 attached.  Where the pro se party is not the plaintiff, the movant must amend the form notice as necessary to reflect that fact.

**"Notice to Pro Se Litigant Who Opposes a**
**Motion for Summary Judgment"**

The defendant in this case has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  This means that the defendant has asked the court to decide this case without a trial, based on written materials, including affidavits, submitted in support of the motion.  The claims you assert in your complaint may be dismissed without a trial if you do not respond to this motion on time by filing sworn affidavits and/or other documents as required by Rule 56(c) of the Federal Rules of Civil Procedure and by D. Kan. Rule 56.1. The full text of these two rules is attached to this notice.

In short, Fed. R. Civ. P. 56 provides that you may not oppose summary judgment simply by relying upon the allegations in your complaint.  Rather, you must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising specific facts that support your claim.  If you have proof of your claim, now is the time to submit it.  Any witness statements must be in the form of affidavits.  An affidavit is a sworn statement of fact based on personal knowledge stating facts that would be admissible in evidence at trial.  You may submit your own affidavit and/or the affidavits of others.  You may submit affidavits that were prepared specifically in response to defendant's motion for summary judgment.

If you do not respond to the motion for summary judgment on time with affidavits and/or documents contradicting the material facts asserted by the defendant, the court may accept defendant's facts as true, in which event your case may be dismissed and judgment entered in defendant's favor without a trial.

* * *

As amended 10/13, 9/00.

United States Code Annotated
    Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
        Title VII. Judgment

Federal Rules of Civil Procedure Rule 56

Rule 56. Summary Judgment [Rule Text & Notes of Decisions subdivisions I to XV]

Currentness

<Notes of Decisions for 28 USCA Federal Rules of Civil Procedure Rule 56 are displayed in multiple documents.>

**(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

**(b) Time to File a Motion.** Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

**(c) Procedures.**

  **(1) *Supporting Factual Positions*.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

    **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

    **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

  **(2) *Objection That a Fact Is Not Supported by Admissible Evidence*.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

  **(3) *Materials Not Cited*.** The court need consider only the cited materials, but it may consider other materials in the record.

  **(4) *Affidavits or Declarations*.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

**(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

**(1)** defer considering the motion or deny it;

**(2)** allow time to obtain affidavits or declarations or to take discovery; or

**(3)** issue any other appropriate order.

**(e) Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

**(1)** give an opportunity to properly support or address the fact;

**(2)** consider the fact undisputed for purposes of the motion;

**(3)** grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or

**(4)** issue any other appropriate order.

**(f) Judgment Independent of the Motion.** After giving notice and a reasonable time to respond, the court may:

**(1)** grant summary judgment for a nonmovant;

**(2)** grant the motion on grounds not raised by a party; or

**(3)** consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

**(g) Failing to Grant All the Requested Relief.** If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case.

**(h) Affidavit or Declaration Submitted in Bad Faith.** If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court--after notice and a reasonable time to respond--may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

**CREDIT(S)**

(Amended December 27, 1946, effective March 19, 1948; January 21, 1963, effective July 1, 1963; March 2, 1987, effective August 1, 1987; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009; April 28, 2010, effective December 1, 2010.)

**ADVISORY COMMITTEE NOTES**

1937 Adoption

This rule is applicable to all actions, including those against the United States or an officer or agency thereof.

Summary judgment procedure is a method for promptly disposing of actions in which there is no genuine issue as to any material fact. It has been extensively used in England for more than 50 years and has been adopted in a number of American states. New York, for example, has made great use of it. During the first nine years after its adoption there, the records of New York county alone show 5,600 applications for summary judgments. Report of the Commission on the Administration of Justice in New York State (1934), p. 383. See also *Third Annual Report of the Judicial Council of the State of New York* (1937), p. 30.

In England it was first employed only in cases of liquidated claims, but there has been a steady enlargement of the scope of the remedy until it is now used in actions to recover land or chattels and in all other actions at law, for liquidated or unliquidated claims, except for a few designated torts and breach of promise of marriage. *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 3, r. 6; Orders 14, 14A, and 15; see also O. 32, r. 6, authorizing an application for judgment at any time upon admissions. In Michigan (3 Comp.Laws (1929) § 14260) and Illinois (Smith-Hurd Ill.Stats. c. 110, §§ 181, 259.15, 259.16), it is not limited to liquidated demands. New York (N.Y.R.C.P. (1937) Rule 113; see also Rule 107) has brought so many classes of actions under the operation of the rule that the Commission on Administration of Justice in New York State (1934) recommend that all restrictions be removed and that the remedy be available "in any action" (p. 287). For the history and nature of the summary judgment procedure and citations of state statutes, see Clark and Samenow, *The Summary Judgment* (1929), 38 Yale L.J. 423.

**Note to Subdivision (d).** See Rule 16 (Pre-Trial Procedure; Formulating Issues) and the Note thereto.

**Note to Subdivisions (e) and (f).** These are similar to rules in Michigan. Mich.Court Rules Ann. (Searl, 1933) Rule 30.

1946 Amendment

**Note to Subdivision (a).** The amendment allows a claimant to move for a summary judgment at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party. This will normally operate to permit an earlier motion by the claimant than under the original rule, where the phrase "at any time after the pleading in answer thereto has been served" operates to prevent a claimant from moving for summary judgment, even in a case clearly proper for its exercise, until a formal answer has been filed. Thus in *Peoples Bank v. Federal Reserve Bank of San Francisco,* N.D.Cal.1944, 58 F.Supp. 25, the plaintiff's countermotion for a summary judgment was stricken as premature, because the defendant had not filed an answer. Since Rule 12(a) allows at least 20 days for an answer, that time plus the 10 days required in Rule 56(c) means that under original Rule 56(a) a minimum period of 30 days necessarily has to elapse in every case before the claimant can be heard on his right to a summary judgment. An extension of time by the court or the service of preliminary motions of any kind will prolong that period even further. In many cases this merely represents unnecessary delay. See *United States v. Adler's Creamery, Inc.,* C.C.A.2, 1939, 107 F.2d 987. The changes are in the interest of more expeditious litigation. The 20-day period, as provided, gives the defendant an opportunity to secure counsel and determine a course of action. But in a case where the defendant himself makes a motion for summary judgment within that time, there is no reason to restrict the plaintiff and the amended rule so provides.

**Subdivision (c).** The amendment of Rule 56(c), by the addition of the final sentence, resolves a doubt expressed in *Sartor v. Arkansas Natural Gas Corp., 1944, 64 S.Ct. 724, 321 U.S. 620, 88 L.Ed. 967.* See also Commentary, Summary Judgment as to Damages, 1944, 7 Fed.Rules Serv. 974; *Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co., C.C.A.2d, 1945, 147 F.2d 399,* certiorari denied 1945, *65 S.Ct. 1201, 325 U.S. 861, 89 L.Ed. 1982.* It makes clear that although the question of recovery depends on the amount of damages, the summary judgment rule is applicable and summary judgment may be granted in a proper case. If the case is not fully adjudicated it may be dealt with as provided in subdivision (d) of Rule 56, and the right to summary recovery determined by a preliminary order, interlocutory in character, and the precise amount of recovery left for trial.

**Subdivision (d).** Rule 54(a) defines "judgment" as including a decree and "any order from which an appeal lies." Subdivision (d) of Rule 56 indicates clearly, however, that a partial summary "judgment" is not a final judgment, and, therefore, that it is not appealable, unless in the particular case some statute allows an appeal from the interlocutory order involved. The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This adjudication is more nearly akin to the preliminary order under Rule 16, and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact. See *Leonard v. Socony-Vacuum Oil Co., C.C.A.7, 1942, 130 F.2d 535; Biggins v. Oltmer Iron Works, C.C.A.7, 1946, 154 F.2d 214;* 3 *Moore's Federal Practice,* 1938, 3190-3192. Since interlocutory appeals are not allowed, except where specifically provided by statute, see 3 Moore, op. cit. supra, 3155-3156, this interpretation is in line with that policy, *Leonard v. Socony-Vacuum Oil Co.,* supra. See also *Audi Vision Inc. v. RCA Mfg. Co., C.C.A.2, 1943, 136 F.2d 621; Toomey v. Toomey, 1945, 149 F.2d 19, 80 U.S.App.D.C. 77; Biggins v. Oltmer Iron Works,* supra; *Catlin v. United States, 1945, 65 S.Ct. 631, 324 U.S. 229, 89 L.Ed. 911.*

1963 Amendment

**Subdivision (c).** By the amendment "answers to interrogatories" are included among the materials which may be considered on motion for summary judgment. The phrase was inadvertently omitted from the rule, see 3 Barron & Holtzoff, *Federal Practice & Procedure* 159-60 (Wright ed. 1958), and the courts have generally reached by interpretation the result which will hereafter be required by the text of the amended rule. See Annot., 74 A.L.R.2d 984 (1960).

**Subdivision (e).** The words "answers to interrogatories" are added in the third sentence of this subdivision to conform to the amendment of subdivision (c).

The last two sentences are added to overcome a line of cases, chiefly in the Third Circuit, which has impaired the utility of the summary judgment device. A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue. In this situation Third Circuit cases have taken the view that summary judgment must be denied, at least if the averments are "well-pleaded," and not suppositious, conclusory, or ultimate. See *Frederick Hart & Co., Inc. v. Recordgraph Corp., 169 F.2d 580 (3d Cir. 1948); United States ex rel. Kolton v. Halpern, 260 F.2d 590 (3d Cir. 1958); United States ex rel. Nobles v. Ivey Bros. Constr. Co., Inc., 191 F.Supp. 383 (D.Del.1961); Jamison v. Pennsylvania Salt Mfg. Co., 22 F.R.D. 238 (W.D.Pa.1958); Bunny Bear, Inc. v. Dennis Mitchell Industries, 139 F.Supp. 542 (E.D.Pa.1956); Levy v. Equitable Life Assur. Society, 18 F.R.D. 164 (E.D.Pa.1955).*

The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. The Third Circuit doctrine, which permits the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule. See 6 *Moore's Federal Practice* 2069 (2d ed. 1953); 3 Barron & Holtzoff, supra, § 1235.1.

It is hoped that the amendment will contribute to the more effective utilization of the salutary device of summary judgment.

The amendment is not intended to derogate from the solemnity of the pleadings. Rather it recognizes that, despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary.

Nor is the amendment designed to affect the ordinary standards applicable to the summary judgment motion. So, for example: Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate. Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented. And summary judgment may be inappropriate where the party opposing it shows under subdivision (f) that he cannot at the time present facts essential to justify his opposition.

1987 Amendment

The amendments are technical. No substantive change is intended.

2007 Amendment

The language of Rule 56 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Former Rule 56(a) and (b) referred to summary-judgment motions on or against a claim, counterclaim, or crossclaim, or to obtain a declaratory judgment. The list was incomplete. Rule 56 applies to third-party claimants, intervenors, claimants in interpleader, and others. Amended Rule 56(a) and (b) carry forward the present meaning by referring to a party claiming relief and a party against whom relief is sought.

Former Rule 56(c), (d), and (e) stated circumstances in which summary judgment "shall be rendered," the court "shall if practicable" ascertain facts existing without substantial controversy, and "if appropriate, shall" enter summary judgment. In each place "shall" is changed to "should." It is established that although there is no discretion to enter summary judgment when there is a genuine issue as to any material fact, there is discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact. *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 256-257 (1948). Many lower court decisions are gathered in 10A Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d, § 2728. "Should" in amended Rule 56(c) recognizes that courts will seldom exercise the discretion to deny summary judgment when there is no genuine issue as to any material fact. Similarly sparing exercise of this discretion is appropriate under Rule 56(e)(2). Rule 56(d)(1), on the other hand, reflects the more open-ended discretion to decide whether it is practicable to determine what material facts are not genuinely at issue.

Former Rule 56(d) used a variety of different phrases to express the Rule 56(c) standard for summary judgment--that there is no genuine issue as to any material fact. Amended Rule 56(d) adopts terms directly parallel to Rule 56(c).

2009 Amendment

The timing provisions for summary judgment are outmoded. They are consolidated and substantially revised in new subdivision (c)(1). The new rule allows a party to move for summary judgment at any time, even as early as the commencement of the action. If the motion seems premature both subdivision (c)(1) and Rule 6(b) allow the court to extend the time to respond. The rule does set a presumptive deadline at 30 days after the close of all discovery.

The presumptive timing rules are default provisions that may be altered by an order in the case or by local rule. Scheduling orders are likely to supersede the rule provisions in most cases, deferring summary-judgment motions until a stated time or establishing different deadlines. Scheduling orders tailored to the needs of the specific case, perhaps adjusted as it progresses,

are likely to work better than default rules. A scheduling order may be adjusted to adopt the parties' agreement on timing, or may require that discovery and motions occur in stages--including separation of expert-witness discovery from other discovery.

Local rules may prove useful when local docket conditions or practices are incompatible with the general Rule 56 timing provisions.

If a motion for summary judgment is filed before a responsive pleading is due from a party affected by the motion, the time for responding to the motion is 21 days after the responsive pleading is due.

### 2010 Amendment

Rule 56 is revised to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

**Subdivision (a).** Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word--genuine "issue" becomes genuine "dispute." "Dispute" better reflects the focus of a summary-judgment determination. As explained below, "shall" also is restored to the place it held from 1938 to 2007.

The first sentence is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense. The subdivision caption adopts the common phrase "partial summary judgment" to describe disposition of less than the whole action, whether or not the order grants all the relief requested by the motion.

"Shall" is restored to express the direction to grant summary judgment. The word "shall" in Rule 56 acquired significance over many decades of use. Rule 56 was amended in 2007 to replace "shall" with "should" as part of the Style Project, acting under a convention that prohibited any use of "shall." Comments on proposals to amend Rule 56, as published in 2008, have shown that neither of the choices available under the Style Project conventions--"must" or "should"--is suitable in light of the case law on whether a district court has discretion to deny summary judgment when there appears to be no genuine dispute as to any material fact. Compare *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)("Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case in which there is reason to believe that the better course would be to proceed to a full trial. *Kennedy v. Silas Mason Co.*, 334 U.S. 249 * * * (1948)"), with *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Eliminating "shall" created an unacceptable risk of changing the summary-judgment standard. Restoring "shall" avoids the unintended consequences of any other word.

Subdivision (a) also adds a new direction that the court should state on the record the reasons for granting or denying the motion. Most courts recognize this practice. Among other advantages, a statement of reasons can facilitate an appeal or subsequent trial-court proceedings. It is particularly important to state the reasons for granting summary judgment. The form and detail of the statement of reasons are left to the court's discretion.

The statement on denying summary judgment need not address every available reason. But identification of central issues may help the parties to focus further proceedings.

**Subdivision (b).** The timing provisions in former subdivisions (a) and (c) are superseded. Although the rule allows a motion for summary judgment to be filed at the commencement of an action, in many cases the motion will be premature until the nonmovant has had time to file a responsive pleading or other pretrial proceedings have been had. Scheduling orders or other pretrial orders can regulate timing to fit the needs of the case.

**Subdivision (c).** Subdivision (c) is new. It establishes a common procedure for several aspects of summary-judgment motions synthesized from similar elements developed in the cases or found in many local rules.

Subdivision (c)(1) addresses the ways to support an assertion that a fact can or cannot be genuinely disputed. It does not address the form for providing the required support. Different courts and judges have adopted different forms including, for example, directions that the support be included in the motion, made part of a separate statement of facts, interpolated in the body of a brief or memorandum, or provided in a separate statement of facts included in a brief or memorandum.

Subdivision (c)(1)(A) describes the familiar record materials commonly relied upon and requires that the movant cite the particular parts of the materials that support its fact positions. Materials that are not yet in the record--including materials referred to in an affidavit or declaration--must be placed in the record. Once materials are in the record, the court may, by order in the case, direct that the materials be gathered in an appendix, a party may voluntarily submit an appendix, or the parties may submit a joint appendix. The appendix procedure also may be established by local rule. Pointing to a specific location in an appendix satisfies the citation requirement. So too it may be convenient to direct that a party assist the court in locating materials buried in a voluminous record.

Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. One party, without citing any other materials, may respond or reply that materials cited to dispute or support a fact do not establish the absence or presence of a genuine dispute. And a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.

Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Subdivision (c)(3) reflects judicial opinions and local rules provisions stating that the court may decide a motion for summary judgment without undertaking an independent search of the record. Nonetheless, the rule also recognizes that a court may consider record materials not called to its attention by the parties.

Subdivision (c)(4) carries forward some of the provisions of former subdivision (e)(1). Other provisions are relocated or omitted. The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record.

A formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit.

**Subdivision (d).** Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).

A party who seeks relief under subdivision (d) may seek an order deferring the time to respond to the summary-judgment motion.

**Subdivision (e).** Subdivision (e) addresses questions that arise when a party fails to support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c). As explained below, summary judgment cannot be granted by default even if there is a complete failure to respond to the motion, much less when an attempted response fails to comply with Rule 56(c) requirements. Nor should it be denied by default even if the movant completely fails to reply to a nonmovant's response. Before deciding on other possible action, subdivision (e)(1) recognizes that the court may afford an opportunity to properly support or address the fact. In many circumstances this opportunity will be the court's preferred first step.

Subdivision (e)(2) authorizes the court to consider a fact as undisputed for purposes of the motion when response or reply requirements are not satisfied. This approach reflects the "deemed admitted" provisions in many local rules. The fact is considered undisputed only for purposes of the motion; if summary judgment is denied, a party who failed to make a proper Rule 56 response or reply remains free to contest the fact in further proceedings. And the court may choose not to consider the fact as undisputed, particularly if the court knows of record materials that show grounds for genuine dispute.

Subdivision (e)(3) recognizes that the court may grant summary judgment only if the motion and supporting materials-- including the facts considered undisputed under subdivision (e)(2)--show that the movant is entitled to it. Considering some facts undisputed does not of itself allow summary judgment. If there is a proper response or reply as to some facts, the court cannot grant summary judgment without determining whether those facts can be genuinely disputed. Once the court has determined the set of facts--both those it has chosen to consider undisputed for want of a proper response or reply and any that cannot be genuinely disputed despite a procedurally proper response or reply--it must determine the legal consequences of these facts and permissible inferences from them.

Subdivision (e)(4) recognizes that still other orders may be appropriate. The choice among possible orders should be designed to encourage proper presentation of the record. Many courts take extra care with pro se litigants, advising them of the need to respond and the risk of losing by summary judgment if an adequate response is not filed. And the court may seek to reassure itself by some examination of the record before granting summary judgment against a pro se litigant.

**Subdivision (f).** Subdivision (f) brings into Rule 56 text a number of related procedures that have grown up in practice. After giving notice and a reasonable time to respond the court may grant summary judgment for the nonmoving party; grant a motion on legal or factual grounds not raised by the parties; or consider summary judgment on its own. In many cases it may prove useful first to invite a motion; the invited motion will automatically trigger the regular procedure of subdivision (c).

**Subdivision (g).** Subdivision (g) applies when the court does not grant all the relief requested by a motion for summary judgment. It becomes relevant only after the court has applied the summary-judgment standard carried forward in subdivision (a) to each claim, defense, or part of a claim or defense, identified by the motion. Once that duty is discharged, the court may decide whether to apply the summary-judgment standard to dispose of a material fact that is not genuinely in dispute. The court must take care that this determination does not interfere with a party's ability to accept a fact for purposes of the motion only. A nonmovant, for example, may feel confident that a genuine dispute as to one or a few facts will defeat the motion, and prefer to avoid the cost of detailed response to all facts stated by the movant. This position should be available without running the risk that the fact will be taken as established under subdivision (g) or otherwise found to have been accepted for other purposes.

If it is readily apparent that the court cannot grant all the relief requested by the motion, it may properly decide that the cost of determining whether some potential fact disputes may be eliminated by summary disposition is greater than the cost of resolving those disputes by other means, including trial. Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event.

**Subdivision (h).** Subdivision (h) carries forward former subdivision (g) with three changes. Sanctions are made discretionary, not mandatory, reflecting the experience that courts seldom invoke the independent Rule 56 authority to impose sanctions. *See* Cecil & Cort, Federal Judicial Center Memorandum on Federal Rule of Civil Procedure 56(g) Motions for Sanctions (April 2,

2007). In addition, the rule text is expanded to recognize the need to provide notice and a reasonable time to respond. Finally, authority to impose other appropriate sanctions also is recognized.

Notes of Decisions (5239)

Fed. Rules Civ. Proc. Rule 56, 28 U.S.C.A., FRCP Rule 56
Including Amendments Received Through 12-1-21

---

**End of Document**
© 2021 Thomson Reuters. No claim to original U.S. Government Works.